IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT,
IN AND FOR LAKE COUNTY, FLORIDA

TOMMI TSCHANTRE,                                    CASE NO.: 12CA 1960
f/k/a TOMMI HAYNES,

    Plaintiff,

v.

WINN-DIXIE STORES, INC., and
BI-LO, L.L.C.,

    Defendants.

_____/

## COMPLAINT FOR DAMAGES
## AND DEMAND FOR JURY TRIAL

    COMES NOW Plaintiff, TOMMI TSCHANTRE f/k/a TOMMI HAYNES ("Plaintiff"), by and through her undersigned counsel, and for her Complaint against Defendants, hereby respectfully alleges as follows:

### THE PARTIES

    1.    Plaintiff is a natural person who resides in Lake County, Florida.

    2.    Defendant WINN-DIXIE STORES, INC. ("Winn-Dixie") is a Florida corporation with a principal business address located in Duval County, Florida which may operate retail grocery store locations in Lake County, Florida and Defendant BI-LO, L.L.C. ("BI-LO") is a Delaware limited liability company with a principal business address located in Greenville, South Carolina which may operate retail grocery store locations in Lake County, Florida.

### JURISDICTION AND VENUE

    3.    This is an action arising under the provisions of the Family and Medical Leave Act of 1993, 29 U.S.C. 2611 *et seq.* (as amended) ("FMLA"), Fla. Stat. 741.313,

1

Fla. Stat. §§ 760.01 - .11 (Florida Civil Rights Act or "FCRA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII"), Fla. Stat. 741.313 (Florida's Domestic Violence Leave Act statute or "FDVLA"), and Fla. Stat. 448.101-.105, (Florida's Whistleblower Act statute or "FWA").

4.   Personal and subject matter jurisdiction are appropriate in Lake County Circuit Court because the parties either reside or maintain significant business or other relationships in Lake County, the amount in controversy exceeds $15,000.00, and this Court has original jurisdiction over the state FCRA, FDVLA, and FWA claims and concurrent jurisdiction over the federal FMLA and Title VII claims alleged herein.

5.   At all times pertinent to this litigation, Defendants engaged in a regular course of business in Lake County, Florida and has allegedly committed acts in Lake County, Florida in violation of Plaintiff's rights under the laws set forth above, thereby giving this Court personal jurisdiction over Defendants.

6.   Venue is proper in the Fifth Judicial Circuit in and for Lake County, Florida since all parties have, or at the pertinent time had, significant personal or business contacts with Lake County, Florida.

## STATUS OF DEFENDANTS

7.   Upon information and belief, BI-LO formally acquired Winn-Dixie on or about March 9, 2012.

8.   As a result of the acquisition described in paragraph 7, BI-LO is a successor in interest to the predecessor Winn-Dixie and assumed liability for Winn-Dixie's violations of the employment statutes at issue in this Complaint.

2

9.     Plaintiff was directly employed by BI-LO for the period of time after BI-LO's acquisition of Winn Dixie on or about March 9, 2012 up to the date of Plaintiff's termination on March 28, 2012 therefore BI-LO is liable for its own violation of the employment statutes at issue in this Complaint resulting from acts that occurred while it was Plaintiff's direct employer.

10.    As such, BI-LO is being sued in its present capacity as the most recent employer of Plaintiff and as a successor in interest to Winn-Dixie.

11.    Winn-Dixie is being sued in its capacity as a predecessor in interest and Plaintiff's former direct employer.

12.    BI-LO had actual or constructive notice of Plaintiff's claims before acquiring Winn-Dixie.

13.    Winn-Dixie, upon information and belief, either no longer exists as an operating corporate entity or is in the process of winding down its corporate affairs, therefore, its ability to provide relief to Plaintiff for its violations of the statutes alleged herein is, has been, or will be compromised.

14.    There has been substantial continuity of the business operations of Winn-Dixie after BI-LO's acquisition of Winn-Dixie; specifically, Winn-Dixie operated a chain of retail grocery stores under the Winn-Dixie brand name and BI-LO has continued to operate those stores as retail grocery stores under the Winn-Dixie brand name since the date of acquisition.

15.    BI-LO utilizes substantially the same retail store locations to offer its products and services as existed under the Winn-Dixie corporate entity.

16.   BI-LO has retained and continues to utilize substantially the same workforce as existed under the Winn-Dixie corporate entity.

17.   BI-LO has retained and continues to utilize substantially the same supervisory personnel as existed under the Winn-Dixie operating structure.

18.   Substantially the same jobs exist under substantially similar working conditions under the BI-LO operating structure as they existed under the Winn-Dixie operating structure.

19.   Substantially the same machinery, equipment, and operating methods exist under the BI-LO operating structure as they existed under the Winn-Dixie operating structure.

20.   BI-LO offers substantially the same products and services as Winn-Dixie; namely, retail grocery products and services.

21.   Also as a result of the acquisition described in paragraph 7, and in addition to being a successor in interest to Winn-Dixie, BI-LO was a joint employer with Winn-Dixie for a currently indeterminate time before the formal acquisition.

22.   Based on information and belief:

(a)   There was an arrangement between BI-LO and Winn-Dixie to share employees' services or to interchange employees;

(b)   BI-LO and/or Winn-Dixie acted directly or indirectly in the interest of the other in relation to employees; and/or

(c)   BI-LO and Winn-Dixie were not completely disassociated with respect to employees' employment and may be deemed to share control of employees,

4

either directly or indirectly, because one employer controlled, was controlled by, or was under common control with the other.

23. BI-LO and Winn-Dixie shared or co-determined matters governing the essential terms and conditions of their employees', including Plaintiff's, employment and such sharing or co-determining of control over such employees was either actual or BI-LO and/or Winn-Dixie retained the authority or power to control them.

24. The matters shared or co-determined by BI-LO and Winn-Dixie governing the essential terms and conditions of their employees', including Plaintiff's, employment include but are not limited to:

(a) the power or ability to hire and fire;

(b) the power or ability to supervise;

(c) the power or ability to determine the method and/or rate of employee compensation;

(d) the maintenance of employee records; and/or

(e) the power or ability to assess, grant, deny, or otherwise affect employees' leave rights and the rights appurtenant thereto.

## FMLA STATUTORY PREREQUISITES

25. Winn-Dixie and BI-LO are "employers" for purposes of liability under the FMLA because they are engaged in an industry or activity affecting commerce and have employed 50 or more employees for each working day during each of 20 or more calendar weeks in the current or preceding calendar year.

26. Other individuals whose identities are currently unknown may also be an "employer" for purposes of liability under the FMLA at 29 U.S.C. § 2611(4)(A)(ii)(I)

because he/she/they constitute a "person" pursuant to 29 U.S.C. § 2611(8) that acted directly or indirectly in the interest of an employer to employees of that employer including Ms. Tschantre and her employers Winn-Dixie and BI-LO.

27.    Ms. Tschantre is an "eligible employee" for purposes of FMLA coverage because she was employed for at least 12 months by Winn-Dixie and she provided at least 1,250 hours of service in the 12 months immediately preceding her need for leave.

28.    Winn-Dixie employed at least 50 employees within 75 miles of Plaintiff's primary store location for 20 or more week in the year Plaintiff's need for leave arose and t he immediately preceding year.

29.    Ms. Tschantre worked at least 1,250 hours for Winn-Dixie in the 12 months immediately preceding her need for leave from work.

30.    Ms. Tschantre has complied with all other FMLA statutory prerequisites to bringing this lawsuit.

## FDVLA STATUTORY PREREQUISITES

31.    Winn-Dixie and BI-LO are "employers" for purposes of liability under the FDVLA because they carry on employment in the State of Florida and employed at least 50 employees.

32.    Plaintiff is an "employee" for purposes of FDVLA coverage because she received remuneration from Winn-Dixie for the performance of work as an employee thereof and she had been employed by Winn-Dixie for 3 or more months.

33.    Other individuals whose identities are currently unknown may also be an "employer" for purposes of liability under the FDVLA at Fla. Stat. 741.313 (1)(c) and Fla. Stat. 440.02(16).

## TITLE VII STATUTORY PREREQUISITES

34.    Plaintiff is an individual "person", "employee", and "complaining party" as those terms are defined under 42 U.S.C. §§ 2000e(a), (f) and (l) and she is a female "person" who, at all times material hereto, suffered discrimination and retaliation based on her gender and pregnancy.  As such, she is a member of a class of individuals protected by Title VII.

35.    Defendants are "employers" as that term is defined under 42 U.S.C. § 2000e(b) because they employed 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

36.    Plaintiff timely dual-filed a charge of employment discrimination and retaliation against Defendant Winn-Dixie with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") within 300 days of the last date of Defendant Winn-Dixie's alleged unlawful conduct.

37.    Plaintiff has brought this Complaint within 90 days of the date she received an EEOC "right to sue" letter.

38.    Plaintiff has complied with all filing requirements and prerequisites established by Title VII prior to bringing this lawsuit.

## FCRA STATUTORY PREREQUISITES

39.    Plaintiff is a female "person" who, at all times material hereto, suffered discrimination and retaliation based on her sex and pregnancy.  As such, she is a member of a class of individuals protected by the Florida Civil Rights Act of 1992, Sections 760.01-.11, Florida Statutes *as amended*.

7

40.   Defendant meets the statutory criteria for coverage as an "employer" under the Florida Civil Rights Act of 1992, Sections 760.01-.11, Florida Statutes *as amended.*

41.   Plaintiff meets the statutory criteria for coverage as an "employee" under the Florida Civil Rights Act of 1992, Sections 760.01-.11, Florida Statutes *as amended.*

42.   Plaintiff timely filed a charge of employment discrimination against Defendant under theories of sex discrimination and retaliation with the appropriate investigative agency.

43.   Plaintiff has complied with all FCRA requirements and prerequisites prior to bringing this lawsuit.

## FWA STATUTORY PREREQUISITES

44.   Plaintiff was an "employee" of Defendant as defined in Fla. Stat. 448.101(2), and is, as such, a member of a class of individuals subject to the protection of the Whistleblower Act.

45.   Defendant meet the statutory criteria for coverage as an "employer" as defined in Fla. Stat. 448.101(3) because it employed at least ten employees.

46.   Plaintiff has complied with all other requirements and prerequisites of Florida's Whistleblower Act.

## GENERAL ALLEGATIONS

47.   On or around October 2, 1997, Plaintiff began working for Winn-Dixie as a cashier.

48.   In or around 2008, Plaintiff was placed by Winn-Dixie in a position known as Center Store Manager for a Winn-Dixie store located in Leesburg, Lake County, Florida.

49.   In or around April 2010, an individual named Bill Campbell was installed as the Store Manager at the Leesburg location where Plaintiff worked and he became her new direct supervisor.

50.   Beginning almost immediately after his arrival in April 2010 and continuing into 2011, Mr. Campbell complained to Plaintiff -- who at the time was a single mother -- that he perceived that her child care needs were interfering with Mr. Campbell's preferred scheduling for the Center Store Manager position.

51.   In April 2010, Mr. Campbell directly told Plaintiff that she should step down as the Center Store Manager because she was a single parent and get back in a relationship with her husband because it would be easier for Mr. Campbell to make a schedule.

52.   Plaintiff refused to step down.

53.   Mr. Campbell expressed irritation that Plaintiff refused to step down but he did nothing else at that time.

54.   On or about July 26, 2010, Plaintiff suffered injuries as a result of a domestic violence incident.

55.   Plaintiff contacted Mr. Campbell a few hours after the incident and specifically asked him for leave to obtain care and counseling for her injuries.

56.   Mr. Campbell refused to provide the requested leave, told Plaintiff that if she did not report work she would be terminated, and that working would be good for her to keep her mind off of her domestic troubles.

57.   Several months later, in early 2011, Mr. Campbell's again threatened to terminate, demote, transfer, or otherwise impact Plaintiff's employment unless she

indicated a willingness to work Mr. Campbell's preferred scheduling for the Center Store Manager position.

58.    In February 2011, Mr. Campbell instructed Plaintiff to apply for two positions that were available in the Leesburg store (Produce Manager and Bakery Manager) which positions Mr. Campbell believed would better match Plaintiff's child care needs and Mr. Campbell's preferred scheduling for the Center Store Manager position for which he would seek another person to assume.

59.    Mr. Campbell indicated that if Plaintiff did not apply for the two open positions described in the previous paragraph, Plaintiff would be terminated, demoted, or transferred.

60.    Mr. Campbell also indicated that if Plaintiff did apply for both of the open positions, she would be guaranteed placement in one of them.

61.    Plaintiff felt coerced into applying for both positions and she did apply out of fear of termination, demotion, or transfer.

62.    Despite applying for both positions after Mr. Campbell's threat of termination, demotion, or transfer and despite Mr. Campbell's promise that if Plaintiff applied for both positions she would be guaranteed placement in one of them, both positions were filled by males.

63.    After Plaintiff did not receive either the Produce Manager or Bakery Manager positions she applied for, Mr. Campbell indicated that if Plaintiff did not accept a lesser paying position in the store known as an ICM position (a/k/a Inventory Control Manager), she would be terminated, demoted, or transferred.

64.    Plaintiff reasonably perceived Mr. Campbell and Winn-Dixie's actions as being discriminatory based upon her gender and therefore filed a Charge of Discrimination in or around April 2011.

65.    In or around late February or early March 2011, Plaintiff had become pregnant.

66.    In May 2011, Plaintiff informed Mr. Campbell that she had become pregnant and that her due date was expected to be in or around late November 2011.

67.    Mr. Campbell immediately expressed irritation with Plaintiff's pregnancy and complained that her due date was going to be during the busy Thanksgiving holiday grocery shopping period.

68.    Mr. Campbell also told Plaintiff that when she left to have her baby: "I am going to be screwed."

69.    Plaintiff also presented a doctor's note to Mr. Campbell in May 2011 which contained lifting restrictions to which Mr. Campbell exclaimed: "This means you can't perform your position."

70.    In or around June 2011, Mr. Campbell began assigning Plaintiff to the less desirable night shift more frequently than before she had announced her pregnancy.

71.    In July 2011, Plaintiff presented another doctor's note which limited her ability to work to 8 hours a day instead of the 10 hour shifts she previously had been working due to medical difficulties related to her pregnancy.

72.    Shortly after the presentation of this work-limitation doctor's note, Winn-Dixie asked Plaintiff to sign some sort of document pertaining to tracking her hours worked which she had never been required to do before.

73. Winn-Dixie began tracking the salaried Plaintiff's working hours and did not so track other salaried employees' working hours at all or at the same level of scrutiny.

74. Moreover, Mr. Campbell ordered the store's Inventory Control Manager Selena Murray to enter Plaintiff's schedule (and others' schedules) in Winn-Dixie's schedule tracking computer program that did not accurately convey the actual schedules prepared by Mr. Campbell that store employees actually worked.

75. Plaintiff worked the doctor-ordered reduced work schedule from the date of presentation of her doctor's note in July 2011 to September 11, 2011.

76. On September 11, 2011 suffered an episode of extreme abdominal pain while she was working at Winn-Dixie.

77. Plaintiff asked Mr. Campbell if she could leave and go to the emergency room.

78. Mr. Campbell refused to authorize her to leave the store and go to the emergency room.

79. Winn-Dixie District Manager Mark McLin (Mr. Campbell's direct supervisor) was present in the store that evening and Plaintiff secured his authorization to leave the store and go to the emergency room.

80. Plaintiff went to the emergency room and was admitted.

81. Plaintiff was diagnosed as having suffered an episode of pre-term labor.

82. The next day, pursuant to doctor's orders, Plaintiff requested a week off from work to recuperate from the medical emergency.

83.     Mr. Campbell sent Inventory Control Manager Selena Murray to Plaintiff's home to sign some sort of document relating to her need to be absent.

84.     Plaintiff's condition did not improve and her doctor indicated that she needed to stay off her feet and rest at least until early November 2011.

85.     Plaintiff informed Winn-Dixie of this development and requested leave for the period described in the previous paragraph.

86.     While on leave, Plaintiff received a note from Winn-Dixie in or around early-to-mid October 2011 indicating that it would only hold her position until November 19, 2011.

87.     Shortly thereafter, Plaintiff suffered another medical emergency and was hospitalized for five days in October 2011.

88.     As a result of the setback, Plaintiff's doctor indicated that she could not go back to work in early November and must instead stay off her feet until birth.

89.     Plaintiff informed Winn-Dixie of this development.

90.     Plaintiff gave birth to a son on November 23, 2011.

91.     In December 2011, Plaintiff contacted Winn-Dixie to inquire about the status of her employment.

92.     Plaintiff was told that her Center Store Manager position was no longer available but that she was still considered to be an active employee.

93.     In January 2012, Plaintiff again contacted Winn-Dixie to inquire about the status of her employment and she was directed to a human resources representative named Cyrus who told her that she could apply for open positions in the company.

94.     In early February 2012, Cyrus contacted Plaintiff and told her she had two weeks to secure employment or she would be terminated by Winn-Dixie.

95.     Plaintiff was able to secure an interview for a bakery manager position at a Winn-Dixie store location in Eustis, Florida with Store Manager Al Gan.

96.     During the interview, Mr. Gan indicated that Plaintiff was qualified for the job but that he was concerned about her past request for leave pertaining to the domestic abuse incident which he had learned about from Mr. Campbell.

97.     Plaintiff assured Mr. Gan that she no longer was involved with the individual that had victimized her.

98.     Mr. Gan responded that "people don't change" and "leopards don't change their spots" and that he believed that if he hired Plaintiff there would be future scheduling problems because of her anticipated need for leave for domestic abuse issues.

99.     Mr. Gan also indicated that because Plaintiff had a new baby, she would likely need time off from work to attend to her baby's needs.

100.    Plaintiff was not offered the bakery manager position.

101.    On March 28, 2012, Plaintiff was terminated.

102.    Plaintiff has complied with all prerequisites to bringing this lawsuit.

<u>**SPECIFIC ALLEGATIONS**</u>

**COUNT I**

**VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**

103.    Plaintiff hereby adopts and incorporates by reference each and every allegation asserted in paragraphs 1-30, 47-49, 54-56, and 65-102 above as if set forth fully and completely herein.

104.    Plaintiff became eligible for FMLA leave during her tenure of employment with Defendants Winn-Dixie and/or BI-LO.

105.    Plaintiff's 2010 domestic violence related and 2011 pregnancy related medical conditions were serious health conditions that qualified her for FMLA leave and reinstatement rights.

106.    Defendants possessed knowledge of Plaintiff's serious health conditions.

107.    Plaintiff was entitled under the FMLA to a total of twelve (12) weeks of leave to attend to her 2010 domestic violence related serious health condition, and a total of twelve (12) weeks of leave to attend to her 2011 pregnancy related serious health condition and the birth of her child.

108.    Despite notifying Defendant Winn-Dixie of her need for leave -- which leave was FMLA-qualifying -- Defendant Winn-Dixie failed to provide Plaintiff with notices of her FMLA rights and obligations to which she was entitled in both 2010 and 2011.

109.    Plaintiff suffered an adverse employment action in 2010 by not being permitted to take leave pertaining to the domestic violence incident and she suffered adverse employment actions in 2011 and 2012 by (1) not being reinstated to the same or substantially similar position at the conclusion of her FMLA protected leave, (2) being denied alternative employment for which she was qualified, and then (3) being terminated.

110.    Defendants interfered with Plaintiff's rights granted to her under the FMLA and discriminated and/or retaliated against her for exercising those rights.

111.   As a direct and proximate result of Defendants' acts, Plaintiff has suffered damages including but not limited to lost employment, income, and benefits.

**WHEREFORE**, Plaintiff respectfully requests that this Court direct judgment in favor of her and against Defendants and award her such legal damages as she has sustained and as shall appear proper, including, but not limited to, compensatory damages, consequential damages, actual monetary losses sustained as a direct result of the aforementioned violation, liquidated damages, attorney's fees, court costs, pre-and post-judgment interest, and all other relief that this Court may deem just and appropriate.

## COUNT II

### VIOLATION OF THE FDVLA AT FLA. STAT. 741.313

112.   Plaintiff hereby adopts and incorporates by reference each and every allegation asserted in paragraphs 1-24, 31-33, 47-49, 54-56, and 95-102 above as if set forth fully and completely herein.

113.   Plaintiff was eligible for FDVLA leave during her tenure of employment with Defendants Winn-Dixie and/or BI-LO at the time her need for such leave arose.

114.   Plaintiff suffered an incident of domestic violence that qualified her for FDVLA leave.

115.   Plaintiff notified Winn-Dixie of her need for leave as a result of domestic violence.

116.   Plaintiff was entitled under the FDVLA to a total of three (3) days of leave to attend to her physical and psychological injuries pertaining to the domestic violence incident.

117.    Despite notifying Defendant Winn-Dixie of her need for leave in 2010 —
which leave was FDVLA qualifying -- Defendant Winn-Dixie failed to provide Plaintiff
with the leave to which she was entitled which failure constituted an interference with,
restraint of, and denial of her rights under the FDVLA.

118.    In 2012, when Plaintiff applied for a Bakery Manager position at the
Eustis, Florida store location, she was denied an offer of employment for that position
because the Store Manager negatively viewed her previous need for leave for domestic
violence as a negative factor in the employment application process.

119.    Defendants discriminated and/or retaliated against Plaintiff for exercising
her rights under the FDVLA.

120.    Plaintiff suffered an adverse employment action under FDVLA in 2010 by
not being permitted to take leave pertaining to the domestic violence incident and she
suffered an adverse employment action in 2012 by being denied alternative employment
for which she was qualified, and then being terminated.

121.    As a direct and proximate result of Defendants' acts, Plaintiff has suffered
damages.

WHEREFORE, Plaintiff respectfully requests that this Court direct judgment in
favor of her and against Defendants and award her such legal damages as she has
sustained and as shall appear proper, including, but not limited to, economic and non-
economic compensatory damages, attorney's fees and costs pursuant to Section 448.08,
Florida Statutes, pre-and post-judgment interest, and all other relief that this Court may
deem just and appropriate.

17

## COUNT III

## GENDER/PREGNANCY DISCRIMINATION UNDER TITLE VII/PDA

122. Plaintiff hereby adopts and incorporates by reference each and every allegation asserted in paragraphs 1-24, 34-38, 47-53, 57-74, 76-78, 80-81, 83, 86, and 92-102 above as if set forth fully and completely herein.

123. Defendants have, with malice or reckless indifference, violated the dictates of Title VII/PDA by intentionally discriminating against Plaintiff because of her gender, pregnancy, childbirth, and/or related medical condition(s).

124. As a direct and proximate result of Defendants' acts, Plaintiff has suffered damages, including, but not limited to, lost employment, income, benefits, distress, humiliation, and embarrassment.

**WHEREFORE**, Plaintiff respectfully requests that this Court award Plaintiff such damages as Plaintiff has sustained and as shall appear proper within the provisions of Title VII/PDA, including, but not limited to, back pay, front pay, economic and non-economic compensatory damages, punitive damages, attorney's fees, court costs, interest, and all other relief that this Court may deem just and proper.

## COUNT IV

## GENDER/PREGNANCY DISCRIMINATION UNDER FCRA

125. Plaintiff hereby adopts and incorporates by reference each and every allegation asserted in paragraphs 1-24, 39-43, 47-53, 57-74, 76-78, 80-81, 83, 86, and 92-102 above as if set forth fully and completely herein.

126.    Defendants have, with malice or reckless indifference, violated the dictates of the FCRA by intentionally discriminating against Plaintiff because of her gender, pregnancy, childbirth, and/or related medical condition(s).

127.    As a direct and proximate result of Defendants' acts, Plaintiff has suffered damages, including, but not limited to, lost employment, income, benefits, distress, humiliation, and embarrassment.

**WHEREFORE**, Plaintiff respectfully requests that this Court award her such damages as she has sustained and as shall appear proper within the provisions of the FCRA, including, but not limited to, back pay, front pay, compensatory damages including but not limited to damages for mental anguish, loss of dignity, and other intangible injuries, punitive damages, reasonable attorney's fees, court costs, interest, and such other and further relief that this Court may deem just and proper.

## COUNT V

## TITLE VII/PDA RETALIATION

128.    Plaintiff hereby adopts and incorporates by reference each and every allegation asserted in paragraphs 1-24, 34-38, 47-53, 57-74, 76-78, 80-81, 83, 86, and 92-102 above as if set forth fully and completely herein.

129.    Defendants have, with malice or reckless indifference, violated the dictates of Title VII/PDA by retaliating against Plaintiff.

130.    Defendants intentionally retaliated against Plaintiff for opposing Title VII/PDA prohibited conduct and participating in an administrative review process by filing a charge of discrimination complaining of conduct that was, or that was reasonable to believe was, in violation of Title VII/PDA.

131.   As a direct and proximate result of Defendants' retaliatory acts, Plaintiff has suffered damages, including, but not limited to, lost employment, income, benefits, distress, humiliation, and embarrassment.

**WHEREFORE,** Plaintiff respectfully requests that this Court award her such damages as she has sustained and as shall appear proper within the provisions of Title VII, including, but not limited to, back pay, front pay, compensatory damages including but not limited to damages for mental anguish, loss of dignity, and other intangible injuries, punitive damages, reasonable attorney's fees, court costs, interest, and such other and further relief that this Court may deem just and proper.

## COUNT VI

### FCRA RETALIATION

132.   Plaintiff hereby adopts and incorporates by reference each and every allegation asserted in paragraphs 1-24, 39-43, 47-53, 57-74, 76-78, 80-81, 83, 86, and 92-102 above as if set forth fully and completely herein.

133.   Defendants have, with malice or reckless indifference, violated the dictates of the FCRA by retaliating against Plaintiff.

134.   Defendants intentionally retaliated against Plaintiff for opposing FCRA prohibited conduct and participating in an administrative review process by filing a charge of discrimination complaining of conduct that was, or that was reasonable to believe was, in violation of Title VII/PDA.

135.   As a direct and proximate result of Defendants' retaliatory acts, Plaintiff has suffered damages, including, but not limited to, lost employment, income, benefits, distress, humiliation, and embarrassment.

**WHEREFORE**, Plaintiff respectfully requests that this Court award her such damages as she has sustained and as shall appear proper within the provisions of the FCRA, including, but not limited to, back pay, front pay, compensatory damages including but not limited to damages for mental anguish, loss of dignity, and other intangible injuries, punitive damages, reasonable attorney's fees, court costs, interest, and such other and further relief that this Court may deem just and proper.

## COUNT VII

## FWA RETALIATION

136. Plaintiff hereby adopts and incorporates by reference each and every allegation asserted in paragraphs 1-24, 44-102 above as if set forth fully and completely herein.

137. As indicated hereinabove, Plaintiff objected to certain practices of Defendants that violated several laws, rules, and regulations including but not limited to the FMLA, FDVLA, Title VII, and FCRA.

138. Defendants have, with malice or reckless indifference, intentionally retaliated against Plaintiff.

139. As a direct and proximate result of Defendants' retaliatory actions, Plaintiff has been damaged including, but not limited to, lost income, benefits, distress, humiliation, and embarrassment.

**WHEREFORE**, Plaintiff respectfully requests that this Court award all such damages as Plaintiff has sustained resulting from Defendants' retaliatory personnel actions and as shall appear proper pursuant to the law of Florida, including, but not limited to, compensation for lost wages, benefits, and other remuneration, and other

compensatory damages allowable at law, attorney's fees, court costs, and expenses pursuant to Section 448.104, Florida Statutes, and pre-judgment and post-judgment interest.

## JURY DEMAND

140. Plaintiff demands a trial by jury as to all issues set forth herein.

DATED this __6__ day of June 2012.

HOLLIFIELD LEGAL CENTRE
By:

Travis R. Hollifield
Florida Bar No.: 0094420
147 E. Lyman Avenue - Suite C
Winter Park, Florida 32789
Telephone: (407) 599-9590
Facsimile: (407) 599-9591
E-mail: trh@trhlaw.com
ATTORNEY FOR PLAINTIFF

22